**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
:
LUIS A. MELENDEZ,                  :
:
        Petitioner,      :
:    Civil Action No. 05-2334 (JAG)
    v.                             :
:    **OPINION**
UNITED STATES OF AMERICA,          :
:
        Respondent.      :
_____:

**GREENAWAY, JR., U.S.D.J.**

**INTRODUCTION**

      Petitioner Luis A. Melendez ("Petitioner") has filed this pro se petition seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2255 ("§ 2255").[1] Petitioner contends that his sentence should be vacated for three reasons. First, Petitioner claims that he was deprived of his sixth amendment right to effective assistance of counsel. Second, Petitioner claims he should receive a new sentencing hearing, in light of the holding in United States v. Booker, 543 U.S. 220 (2005).[2] Third, Petitioner claims the statute under which he was convicted, 18 U.S.C. § 922(g)

---

[1] 28 U.S.C. § 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

[2] The Court in Booker held that the mandatory application of the federal sentencing guidelines violates a defendant's constitutional rights.

1

("§ 922(g)"),³ as applied to Petitioner's case, is an unconstitutional use of Congress' power to regulate interstate commerce under the commerce clause.⁴  For the reasons set forth below, the petition is denied.

## BACKGROUND

On May 18, 2000, a federal grand jury in the district of New Jersey returned a one count indictment charging Petitioner with knowingly possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 2 (commonly known as the felon-in-possession statute).  (Governments' Answer ("Ans.") ¶ 1, Ex. A.)  After a jury trial, Petitioner was convicted on July 2, 2002.  (Ans. ¶ 7, Ex. C.)  Pursuant to the Federal Sentencing Guidelines in force at the time, Petitioner was sentenced to a 92 month term of imprisonment on February 11, 2003.  (Id.)

The following facts are a brief summary of the events which led to Petitioner's arrest and subsequent conviction.  On November 23, 1999, Jersey City Police Officer, Nelson Rivera, and another officer, were patrolling a high-drug area in Jersey City, New Jersey, in an unmarked police vehicle.  (Ans. ¶ 8, Ex. E at 2.)  They noticed Petitioner engaging in suspicious activity with a second individual.  (Id.)  On several occasions, police witnessed the second individual

---

³ 18 U.S.C. § 922(g) provides, in pertinent part:
   It shall be unlawful for any person--

   (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . .

   to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

⁴ Congress' power to regulate interstate commerce is provided in Article I of the Constitution:

   The Congress shall have Power . . .
   To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes[.]

   U.S. CONST. art. I, § 8, cl. 3.

approaching pedestrians and walking them back to Petitioner. (Id.) Petitioner was seen engaging in conversation with the pedestrians, while opening a canvas bag he was carrying to display its contents. (Id.) Officer Rivera suspected the two men were selling stolen items or drugs. (Id.) Dressed in plain clothes, Officer Rivera left the unmarked vehicle, and followed the two men for approximately two blocks. (Id.) From a distance of six feet away, Officer Rivera heard Petitioner say in Spanish, "I have to sell this gun." (Id.) The officers then detained Petitioner until additional police arrived, and Petitioner was arrested. (Id. at 3.) During Petitioner's arrest, the police found a fully loaded Smith & Wesson .357 caliber revolver in the canvas bag. (Ans. ¶ 1, Ex. A.) The gun was registered to Petitioner's then former girlfriend, Ms. Zulma Cabrera, a Sheriff's Officer in Hudson County, New Jersey. (Ans. ¶ 8, Ex. E at 3.) In October of 1997, Ms. Cabrera had reported the firearm stolen, naming Petitioner as the suspected thief. (Ans. Ex. G.)

At trial, Petitioner stipulated that he had a prior felony conviction, and that the firearm found in his possession had previously traveled in interstate commerce. (Ans. ¶ 8, Ex. E at 3.) The only issue for the jury to determine was whether the Petitioner had knowingly possessed the firearm. (Id.) Petitioner contended that he was not aware that the gun was in the bag he was carrying. (Id.) The jury found him guilty of knowingly possessing the firearm. (Id.)

After his trial and sentencing, Petitioner appealed his conviction and sentence. On February 14, 2003, the United States Court of Appeals for the Third Circuit affirmed Petitioner's conviction and sentence. (Ans. ¶ 8, Ex. D.) Petitioner's subsequent request for a writ of certiorari to the United States Supreme Court was denied on June 4, 2004. (Ans. ¶ 9, Ex. F at 10.) On May 2, 2005, Petitioner brought the instant pro se petition, and moved to vacate, set aside or correct his sentence, pursuant to § 2255. (Pet'r's Mot. at 1.) Petitioner contends that he

is entitled to relief under § 2255 because: (1) his Constitutional right to effective assistance of counsel was violated when his attorney failed to call Ms. Zulma Cabrera as a defense witness, and failed to locate and interview two other potential defense witnesses; (2) in light of <u>United States v. Booker</u>, 543 U.S. 220, his sentence was imposed in an unconstitutional manner; and (3) Section 922(g), as applied to his case, is an unconstitutional use of Congress' power under the commerce clause, because the firearm found in his possession never traveled in interstate commerce in connection with the Petitioner. (Pet'r's Mot. at 2-3.) The government answered the petition on December 20, 2005. (Ans. 1.)

## STANDARD OF REVIEW

Section 2255 provides a prisoner in federal custody the opportunity to challenge his sentence if it was unlawfully imposed. Section 2255 allows a petition to proceed on the grounds that: (1) the imposed sentence violated the United States Constitution or laws; (2) the court did not have jurisdiction; (3) the sentence exceeded the maximum allowed by law; or (4) the sentence is subject to collateral attack on other grounds. "[A] motion to vacate sentence under 28 U.S.C. § 2255 is addressed to the sound discretion of the court." <u>United States v. Williams</u>, 615 F.2d 585, 591 (3d Cir. 1980). Unless it appears conclusively from the motion, files, and records that the petitioner is not entitled to relief, the district court must grant the petitioner an evidentiary hearing on the matter. <u>See</u> <u>id.</u>

Habeas corpus does not encompass all sentencing errors because it is not a substitute for direct appeal. <u>See</u> <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994); <u>United States v. Addonizio</u>, 442 U.S. 178, 184 (1979). Errors that justify reversal on direct appeal may not necessarily be sufficient to support collateral relief. <u>Id.</u> at 185. Where a prisoner fails "to raise his claim on direct review, the writ [of habeas corpus] is available only if the [prisoner] establishes 'cause'

...
...
...

for the waiver and shows 'actual prejudice resulting from the alleged violation.'" Reed, 512 U.S. at 354 (quoting Wainwright v. Sykes, 433 U.S. 72 (1977)).  Alternatively, collateral relief is available under § 2255 when the claimed error of law constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." Addonizio, 442 U.S. at 185.  As such, the error must present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Davis v. United States, 417 U.S. 333, 346 (1974).

## DISCUSSION

**A.     Petitioner's Ineffective Assistance of Counsel Claims Are Not Cognizable.**

Petitioner claims that his sixth amendment right to effective assistance of counsel was violated because his attorney failed to call a potential defense witness, and failed to locate and interview witnesses present at the scene of his arrest.  These two contentions will be considered separately.

Under the sixth amendment, Petitioner is guaranteed "reasonabl[e,] effective assistance of counsel." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  A petitioner claiming ineffective assistance of counsel must satisfy a two-prong test.  First, the prisoner must establish that "counsel's performance was deficient." Strickland v. Washington, 466 U.S. 668, 687 (1984).  To prove that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.  The second prong in Strickland requires a prisoner to show that counsel's "deficient performance prejudiced the defense." Id. at 687.  To meet the second prong, the prisoner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  The prisoner has the burden of proof to demonstrate both parts of the test.  See id. at 697.  Failure to prove either part of the test is fatal

to the claim.  Id.  Further, the Supreme Court of the United States has cautioned that "judicial scrutiny of counsel's performance must be highly deferential" and that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.

### 1. Counsel Did Not Render Ineffective Assistance by Failing to Call Ms. Cabrera as a Defense Witness.

Petitioner contends that his fiancee, Ms. Cabrera, to whom the gun was registered, was willing to testify at his trial that she put the gun and some clothes into the bag he was later arrested with.  (Pet'r's Br. 4.)  Petitioner asserts that Ms. Cabrera was willing to testify that she never told him about the presence of the gun in the bag.  (Id.)  Petitioner claims this testimony would have corroborated his defense that he did not know the gun was in the bag.  (Id.)  Counsel did not call Ms. Cabrera at trial.  (Id.)

In accordance with Strickland, this Court must consider initially whether, by failing to call Ms. Cabrera, "counsel's representation fell below an objective standard of reasonableness."  466 U.S. 687-88.  Describing this standard, the Court in Strickland states that "strategic choices made [by the attorney] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Id. at 690.  Petitioner's attorney was permitted to make a strategic decision regarding whether or not to call Ms. Cabrera, so long as the decision was reasonable.  Id.  In light of the facts in this case, the decision was reasonable.  Ms. Cabrera's testimony was subject to either perjury or impeachment, because she had reported the firearm stolen over two years before Petitioner's arrest, and she had named Petitioner as the primary suspect.  (Ans. Ex. G.)  These facts would have contradicted Ms. Cabrera's purported testimony at trial, according to Petitioner, that she placed the firearm in the bag.  The credibility of her

6

testimony would have been dubious, and counsel could have reasonably concluded that calling Ms. Cabrera as a witness would not have been beneficial to the defense. It is within an attorney's discretion to call witnesses as needed. "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) (quoting United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992)). Petitioner has failed to show that counsel's performance fell below the objective standards of reasonableness required by Strickland.

Furthermore, even if counsel's performance was deficient by failing to call Ms. Cabrera as a witness, Petitioner has not satisfied the second prong of Strickland. He has not shown the error was prejudicial to the extent that the outcome of the trial would have been different if not for counsel's error. Petitioner has not submitted affidavits of Ms. Cabrera's alleged trial testimony. However, even if Ms. Cabrera had testified that she placed the firearm in the bag, and this testimony was believed by the jury, it does not exculpate Petitioner. Assuming Petitioner had picked up the bag with the firearm already inside, it is not inconceivable that Petitioner would have discovered the gun was there, prior to being arrested. The testimony of Officer Rivera, who witnessed Petitioner opening the bag, and heard Petitioner say "I have to sell this gun," provides a reasonable basis for the jury's conclusion that Petitioner knowingly possessed the firearm, regardless of how it entered the bag. Petitioner therefore also fails the second prong of the Strickland test.

    **2.**    **Counsel Did Not Render Ineffective Assistance by Failing to Locate Potential Witnesses.**

Petitioner contends that there were two witnesses on the scene when he was arrested.

7

(Pet'r's Br. 4-5.) He claims these witnesses, Mr. Clemente Valez, and a woman known as "Blue Eyes," would have corroborated his version of the events, i.e., that he was not trying to sell the gun, but rather, was merely engaging in small talk when a police officer approached, and assaulted him without word or warning. (Id.) Petitioner contends that counsel failed to try to locate and interview these witnesses adequately, even though they were seen "in the neighborhood" of Petitioner's home. (Id. at 5.)

Again, this Court must consider whether counsel's failure to locate and interview these witnesses "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Failure to investigate potential witnesses can amount to ineffective assistance of counsel. United States v. Gray, 878 F.2d 702 (3d Cir. 1989). This principle is derived from the Strickland mandate that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. In Gray, the Third Circuit stated that "failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." 878 F.2d at 711. However, in Gray, the court found that counsel had "complete[ly] abdicat[ed] . . . the 'duty to investigate' recognized in Strickland." 878 F.2d at 712 (citation omitted). The holding in Gray has been subsequently limited by the Third Circuit to cases where an attorney has names of available witnesses who can provide credible testimony that corroborates a plausible defense theory, but who leaves it exclusively to the defendant to locate and interview potential witnesses, i.e., when "counsel's behavior was not colorably based on tactical considerations but merely upon a lack of diligence." Lewis v. Mazurkiewicz, 915 F.2d 106, 114 (3d Cir. 1990); accord Alfano v. United States, No. 91-1014, 1991 WL 167042, at *3 (D.N.J. Aug. 23, 1991).

In the instant case, Petitioner has not shown that counsel completely abdicated her duty

8

to investigate. Petitioner stipulates that counsel attempted to locate the witnesses, but was unsuccessful. Unlike Gray, at no time did counsel place the burden on the defendant to locate and interview witnesses. Mr. Valez had also been arrested at the scene, and "Blue Eyes" may or may not have been present. Whether either of them would have offered credible testimony, bearing on whether Petitioner was aware he was carrying a firearm, is a judgment call falling within the ambit of trial strategy. Therefore, Petitioner has failed to show that counsel's performance fell below the objective standards of reasonableness required by Strickland.

Even assuming, arguendo, that counsel's attempts to locate these witnesses were inadequate, Petitioner has not met his burden of showing that this error prejudiced the outcome of the trial. Petitioner has not provided affidavits as to what these witnesses might have testified to. Assuming Petitioner's version of what they would have said is correct, the impact of this testimony is speculative. At best, this testimony could have established that Petitioner was not trying to sell the gun. However, this is not the issue the jury was asked to evaluate. The issue was whether Petitioner knowingly possessed the firearm, not whether he was attempting to sell it. Here, no "reasonable probability" exists that this testimony would have changed the outcome of the case. Therefore, Petitioner fails to meet the second prong of the Strickland test on this claim.

Petitioner has failed to meet his burden under Strickland for either of his ineffective assistance of counsel claims. As such, Petitioner's sixth amendment claims are denied.

**B.    Petitioner's Claim Under Booker Must Fail Because His Sentence Was Final Before Booker Was Decided.**

Petitioner argues that his sentence should be reviewed in light of the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), which held that applying the United

States Sentencing Guidelines in a mandatory fashion violates a defendant's constitutional rights.

In Lloyd v. United States, 407 F.3d 608 (3d Cir. 2005), the Third Circuit held that Booker announced "a new rule of criminal procedure for purposes of Teague v. Lane, 489 U.S. 228 (1989)." Lloyd, 407 F.3d at 612. Under Teague, a new rule of criminal procedure "will not be applicable to those cases which have become final before the new [rule is] announced." Lloyd, 407 F.3d at 611 (quoting Teague, 489 U.S. at 310). This bar applies equally to a "federal habeas corpus petitioner filing a motion for collateral review under § 2255." Id.

The narrow exception to the Teague holding allows retroactive application of "'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" Lloyd, 407 F.3d at 613 (quoting Beard v. Banks, 542 U.S. 406 (2004)). However, in Lloyd, the Third Circuit concluded that the Booker rule did not significantly increase the certitude or accuracy of the sentencing process, but "[changed only] the degree of flexibility judges would enjoy in applying the guideline system," 407 F.3d at 615 (quoting McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005)). As a result, the Teague "watershed" exception does not apply, and the new rule of criminal procedure announced in Booker is not applied retroactively. Id.

Following the Third Circuit's decision in Lloyd, the only question this Court must answer, is whether the Petitioner's conviction became final prior to the Booker decision on January 12, 2005. If so, any claims resting on Booker must fail. For purposes of a Teague analysis, Petitioner's conviction became final when his writ of certiorari to the Supreme Court of the United States was denied. Kapral v. United States, 166 F.3d 565, 576 (3d Cir. 1999). This

occurred on June 4, 2004, well before the Booker decision. Petitioner's Booker claims are therefore rejected.

**C.     Section 922(g) is a Constitutional Use of Congress' Power to Regulate Interstate Commerce**

Petitioner claims that applying § 922(g) to the facts of his case is an unconstitutional use of Congress' power to regular interstate commerce. Petitioner concedes that the firearm found in his possession once traveled in interstate commerce, but argues that it never traveled in interstate commerce in connection with him. (Pet'r's Br. 19.) Petitioner contends that once the firearm was issued to Ms. Cabrera in New Jersey, it did not travel in interstate commerce outside of New Jersey. (Id.) Petitioner claims that the firearm's movement in interstate commerce that occurred before he was connected to the gun, is an insufficient basis for Congress to criminalize his possession of the firearm.

In Scarborough v. United States, 431 U.S. 563 (1977), the Supreme Court considered the constitutionality of § 922's predecessor, which made any felon "who receives, possesses, or transports in commerce or affecting commerce . . . any firearm," guilty of a federal offense. 18 U.S.C. App. § 1202(a) (repealed 1986). Scarborough held that "proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce." Id. at 564.

The scope of Congress' power to regulate interstate commerce was narrowed in United States v. Lopez, 514 U.S. 549 (1995). In Lopez, the Court held that a separate provision of § 922, which prohibited firearm possession in a school zone, was unconstitutional, as the regulated activity was neither economic, nor contained a requirement that the possession be

11

connected to interstate commerce. Id. at 549. In light of Lopez, the Third Circuit considered the constitutionality of § 922(g) in its current form in United States v. Gateward, 84 F.3d 670 (3d Cir. 1996). In Gateward, the court held that Lopez did not change the implications of the Scarborough ruling, and that § 922(g) is a proper exercise of Congressional power so long as it is proven that at some point before the defendant's possession, the firearm has traveled in interstate or foreign commerce. 84 F.3d at 671-72.

The scope of Congressional interstate commerce power was refined again by the Supreme Court, subsequent to Gateward, in United States v. Morrison, 529 U.S. 598 (2000) (holding that activity that is non-economic and requires multiple inferences to connect the activity to interstate commerce cannot be criminalized by Congress, even when Congressional findings support the proffered connection), and in Jones v. United States, 529 U.S. 848 (2000) (ruling that absent clear Congressional intent, there is a presumption against interpreting a federal criminal statute to encompass activity that is traditionally considered within the exclusive domain of state law). In the wake of these rulings, the Third Circuit reconsidered the validity of § 922(g) in United States v. Singletary, 268 F.3d 196 (3d Cir. 2000). Once again, the court affirmed the validity of § 922(g), because the statute contains a jurisdictional element, which requires that the firearm at issue once traveled in interstate commerce. Yet another attempt to challenge § 922(g) followed, and the Third Circuit affirmed the holding in Singletary in United States v. Coward, 296 F.3d 176 (3d Cir. 2002). As such, the legitimacy of § 922(g) has been well established.

Petitioner stipulated that the firearm in his possession once traveled in interstate commerce. Therefore, Petitioner's claim that § 922(g) is unconstitutional, as applied to the facts

of his case, is without merit.

## CONCLUSION

For the reasons set forth in this Opinion, the petition is denied.  Further, pursuant to 28 U.S.C. § 2253(c)(2), because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.

 Dated: February 14, 2006

S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.